# United States District Court
# Central District of California

| | |
|---|---|
| INTERVENTION911, a California corporation, | Case № 5:13-CV-01117-ODW(SP) |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT AND AMEND SCHEDULING ORDER; AND DENYING APPLICATION TO FILE UNDER SEAL [434, 439, 446]** |
| v. | |
| CITY OF PALM SPRINGS, a California Charter city, | |
| Defendant(s). | |

## I.    INTRODUCTION

Pending before the Court are Defendant Palm Spring's Motion to Dismiss (ECF No. 434), Plaintiff Intervention911's Motion for Leave to File Supplemental Complaint and to Amend Scheduling Order (ECF No. 446), and Plaintiff's Application for an Order Granting Leave to File Exhibits A & B to Seeley Declaration Under Seal.  (ECF No. 439.)  The Court concludes that Plaintiff has standing to proceed with its lawsuit,  that it is unnecessary for Plaintiff to file its supplemental complaint, and that Plaintiff failed to adhere to the Local Rules in order to file exhibits A & B under seal.  Accordingly, the Court **DENIES** Defendant's Motion to Dismiss,

**DENIES** Plaintiff's Motion for Leave to File Supplemental Complaint, and **DENIES** Plaintiff's Application to File Exhibits Under Seal without prejudice.[1]

## II.    FACTUAL BACKGROUND

Plaintiff Intervention911's ("Intervention") dispute with the City of Palm Springs ("City") has been in litigation for almost five years under the jurisdiction of this Court.  The facts of Intervention's conflict with City are chronicled in several prior opinions.  Thus, the Court highlights only the most salient details here.

**A. Procedural History**

In June 2013, Intervention filed this lawsuit.  It is alleged the City illegally discriminated against it in violation of the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the California Fair Employment and Housing Act ("CFEHA") by "arbitrarily and capriciously" applying City's zoning and building codes to its sober living facilities.  (Compl., ECF No. 1.)

In August 2016, this matter was tried before a jury which ultimately was unable to reach a unanimous verdict and resulted in a mistrial.  (*See* ECF No. 304.)  After the mistrial, the Court scheduled a second trial set to start in May 2017, but two days before retrial began, counsel for City fell ill and sought a one day continuance of the trial.  (Loeb Decl. ¶ 3, ECF No. 421.)  The continuance impacted the availability of other participants in the trial and the parties agreed to continue trial to December 2017.  (*Id.* ¶ 7.)  After the trial continuance, Intervention's representative, Ken Seeley, and its counsel experienced an irreparable break down in their relationship.  (*Id.*)  The Court granted counsel's Motion to Withdraw in August 2017.  (ECF No. 426.)  After a further delay of three months, Intervention retained new counsel.  (ECF No. 431.)

City moved to dismiss the case on November 21, 2017.  (ECF No. 434.)  In light of City's Motion to Dismiss, the Court vacated all dates and deadlines except those related to City's Motion.  (ECF No. 437.)  Intervention in turn filed its

---

[1] Based on Court's review of the papers submitted in connection with these Motions, the Court finds it appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

Opposition along with an Application to file exhibits under seal. (ECF Nos. 438, 439.) Intervention also moved for leave to file a supplemental complaint and to amend the scheduling order on February 14, 2018. (ECF No. 446.)

**B. The Sober Living Facilities**

In 2011 and 2012, Intervention opened two properties: the "Palm Tee" and the "Alexander" (collectively, the "Facilities") in Palm Springs, California. (Compl. ¶¶ 8, 30, 38.) Intervention refers to the Facilities as "Sober Living Homes." (*Id.* ¶¶ 12, 17.) According to Intervention, its Sober Living Homes are designed for individuals ("Residents") who have an untreated drug and/or alcohol addiction. (*Id.* ¶¶ 8–12.) The facilities serve as a place for the Residents to live independently, maintain their sobriety, and "enjoy productive lifestyles." (*Id.*) Intervention claims that it does not provide any treatment or therapy to the Residents at these locations. (*Id.* ¶ 7.)

In late 2011, Intervention held an open house for neighbors of the Alexander. (Statement of Genuine Issues ("SGI"), Plaintiff's Fact #1, ECF No. 59.) Following the open house, neighbors of the Alexander complained to the City about the use of the facility as sober living housing. (*Id.*) Intervention claims that the complaints "were overwhelmingly predicated on unsupported and irrational fears, stereotypes, and discriminatory animus based solely on the disability of the [Residents]." (*Id.*) After the open house, City's Planning Director, Craig Ewing, emailed Intervention and advised that Intervention was "illegally providing help to persons in recovery from alcohol and substance abuse" because Intervention was using the Alexander as an assisted living facility, which required a conditional use permit ("CUP") from the City. (Compl. ¶¶ 31–32.) Intervention responded to Ewing and informed him that there had been no change in use at the Alexander. (*Id.*)

In May 2012, City formally notified Intervention that the Facilities were operating as assisted living facilities without CUPs in violation of Palm Springs' zoning ordinance, and that as a result they had been identified as public nuisances. (*Id.* ¶ 44.) Intervention claims it met with the City twice to explain that it was not

operating assisted living facilities and that it did not provide services that required CUPs. (*Id.* ¶ 51.) Intervention alleges that City staff ignored its contentions, and threatened to cut off the Facilities' electricity if Intervention did not apply for CUPs. (*Id.* ¶¶ 52–53.)

Intervention applied for CUPs for the Facilities in June 2012. (Statement of Undisputed Facts ("SUF") ¶ 24; SGI ¶ 24, ECF Nos. 47, 59.) City ultimately notified Intervention that it could not approve the CUP applications because operating the Facilities was "inconsistent with the General Plan since it [was] not a hotel/tourist related use." (SGI ¶ 25.) City staff directed Intervention to convert its CUP applications to applications for a Planned Development District permit ("PDD") if it wished to continue to operate the Facilities as sober housing facilities. (*Id.*) Intervention withdrew its CUP applications, and sent City a letter stating that the Facilities should be treated as "hotels" rather than "assisted living." (SUF ¶ 26; SGI ¶ 26.) This would have permitted the Facilities to operate under City's zoning code by right. (*See* SGI ¶¶ 4–10.)

On November 1, 2012, the City officially concluded that Facilities could not be considered hotels. (SUF ¶ 26; SGI ¶ 26.) City's determination was based on information gleaned from Intervention's CUP applications, marketing brochures, website and statements by its attorneys. (Compl., Ex. A.) Ewing stated that when "ambiguities" regarding the application of the zoning code exist, the Palm Springs Zoning Code "grants authority to the Planning director to determine the applicability of the code." (*Id.*) As a result, Ewing concluded that Intervention was operating non-permitted sober living facilities/substance abuse recovery centers in violation of City's zoning code, and had to cease operations immediately or refile its applications for CUPs. (*Id.*)

In December 2012, Intervention sought reconsideration of Ewing's decision by the City Planning Commission. (SUF ¶ 30; SGI ¶ 30.) The Planning Commission continued the hearing and directed City staff to work with Intervention on issues

relating to zoning and building requirements and directed staff to further investigate the changes made on-site as indicated by Intervention. (SUF ¶ 33; SGI ¶ 33.)

Instead of contacting Intervention, City allegedly contacted the Palm Springs Fire Department ("PSFD") "to gain support" for the City's November 1, 2012 decision that the Facilities could not be considered hotels. (Compl. ¶ 79.) In December 2012, the PSFD reclassified the Facilities under the California Building Code from "R-1" to "R-4." (City's Compendium of Evidence in Support of Summary Judgment ("Comp. of Evid."), Ex. P (PSFD Evaluation of Proposed Change of Use), ECF No. 48.) An "R-4" classification, which includes alcoholism or drug abuse recovery or treatment facilities, requires special sprinkler systems. (*Id.*) Thus, Intervention had to install "automatic fire sprinkler systems and fire alarm and detection systems . . . for the occupancy of the [Facilities]." *Id.*

Intervention contends that it has been treated differently than other sober living facilities in Palm Springs. (SGI, Plaintiff's Fact ¶ 11.) Prior to purchasing the Facilities, Intervention claims that it "engaged in due diligence" to understand how other group residences for people in recovery were operated in Palm Springs. (Compl. ¶ 20.) After visiting other facilities, Intervention allegedly "learned that the City did not classify other group residences … as 'substance abuse treatment facilities' or 'assisted living facilities.'" (*Id.*) Intervention asked Ewing why he wasn't taking the same actions against the other sober living facilities and he explained that he had not received any neighbor complaints concerning them. (SGI, Plaintiff's Fact # 14.)

**C. The Sale of the Facilities**

In June 2014, Intervention conveyed title to the real property of the Facilities to trusts associated with Intervention's principal shareholders, Ken Seeley and Eric McLaughlin (the "Trusts"). (Opp'n 7, ECF No. 438.) Intervention alleges that it continued to operate the Facilities "in all respects, operationally and financially,

despite transfer of the ownership of the real properties." (Mot. Supp. Compl. 34, ECF No. 446.)

In September 2017, the Trusts sold the Facilities to Zenith Homes, LLC. (Seeley Decl. ¶ 12, ECF No. 438-1.) Intervention claims that it continued to operate the Facilities as sober living homes until it entered into an Asset Purchase Agreement (the "APA") and a Management Services Agreement (the "MSA") with a company called Urwell in October 2017. (Opp'n 8.) According to Intervention, Urwell currently provides management services for the Facilities under the MSA, pending closing of the APA. (*Id*.) Intervention claims that it is still the operator of the business under the MSA, but if the APA does not close, the MSA terminates and Intervention will then resume full responsibility for the operation and management of the Facilities. (*Id.*)

Intervention continues litigation against City to ensure that the Facilities can continue to provide sober living housing services without the need for a CUP, which will increase the likelihood that the APA with Urwell will close. (*Id.*)

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction. The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction, which includes the requirement that plaintiffs have standing to bring their claims. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010). Rule 12(b)(1) jurisdictional attacks can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply

with equal force to Article III standing when it is being challenged on the face of the complaint. *See Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

On the other hand, with a factual Rule 12(b)(1) attack, a court may look beyond the complaint. *See White*, 227 F.3d at 1242–43 (affirming judicial notice of matters of public record in Rule 12(b)(1) factual attack); *see also Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that a district court is free to hear evidence regarding jurisdiction). In a factual attack, a court need not presume the truthfulness of the allegations in the complaint. *White*, 227 F.3d at 1242. But courts should refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on resolution of the factual issues going to the merits." *Augustine*, 704 F.2d at 1077 (holding that resolution of factual issues going to the merits requires a court to employ the standard applicable to a motion for summary judgment).

**B.     Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones,* 319 F.3d 483, 494 (9th Cir.2003). The factual "allegations must be enough to raise a right to relief above the speculative level" and a claim for relief must be "plausible on its face." *Twombly*, 550 U.S. at 555, 570.

Determining whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal,* 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint ... as true and ... in the light most favorable" to the plaintiff. *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir.2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001). Moreover, a court may take judicial notice of matters of public record without converting the motion into one for summary judgment. *E.g.*, *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

## C.    Rule 15(d)

Federal Rule of Civil Procedure 15(d) gives district courts broad discretion in allowing supplemental pleadings. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). Because Rule 15(d) is a tool of judicial economy and convenience, its use is favored. *Id.* To satisfy Rule 15(d), a supplemental pleading need only bear "some relationship" to the "subject of the original action." *Id.* at 414. This is true even if the supplemental pleading raises new claims, so long as allowing the pleading would "promote the economical and speedy disposition of the controversy." *Id.* at 473. Judicial efficiency is served when "the entire controversy between the parties could be settled in one action." *Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (per curiam) (quotation marks and alterations omitted).

If the minimal "some relationship" standard is met, then the pleading should be allowed, "absent a showing of prejudice to the defendant." *Keith*, 858 F.2d at 475. While the need for extensive new discovery could be prejudicial, there is no prejudice if the supplemental complaint requires only "minimal further discovery" and most of the required information already exists in the defendant's own files. *See LaSalvia v. United Dairymen of Ariz.,* 804 F.2d 1113, 1119 (9th Cir. 1986). Futility could also preclude a supplemental pleading. *See Burka v. Aetna Life Ins. Co.,* 945 F. Supp. 313,

318 (D.D.C. 1996) ("Furthermore, in deciding whether to grant or deny a motion to supplement, the Court may consider the merits of the proposed new pleading.").

**D.     Motion to File Documents Under Seal**

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). The presumption of access to court records is "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Center for Auto Safety v. Chrysler Group, LLC,* 809 F.3d 1092, 1096 (9th Cir. 2016). Where a party moves to file a motion or documents attached to a motion, under seal, the focus is on the underlying motion and whether it is "more than tangentially related to the underlying cause of action. *Id.* at 1099. When the motion is more than tangentially related to the merits, the movant must show compelling reasons for overcoming the presumption in favor of public access. *Id.* at 1096–97. Otherwise, a party only needs to show good cause. *Id.*

## IV.     DISCUSSION

**A.     City's Motion to Dismiss for Lack of Standing**

City contends that Intervention lacks standing because Intervention sold the Facilities that were subject to City's allegedly discriminatory actions. City moves to dismiss Intervention's claims under Rules 12(b)(6), 12(c), and 12(d) of the Federal Rules of Civil Procedure. (Mot. 1., ECF No. 434.) However, the Ninth Circuit has held that while lack of *statutory* standing requires dismissal under Rule 12(b)(6), lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis

in original).  Thus, the Court construes City's motion as a motion to dismiss under Rule 12(b)(1).

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted).  In federal court, standing to sue is governed by federal law, even in diversity cases based on state law claims.  *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3rd. Cir. 1994).  A plaintiff invoking federal jurisdiction bears the burden of establishing the "irreducible constitutional minimum" of standing by demonstrating (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins* 136 S. Ct. 1540, 1543 (2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992)).  In addition to the immutable requirements of Article III, the Supreme Court has adopted general "prudential" principles that encompass "at least three broad principles: … the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (internal citations and internal quotation marks omitted).

## 1. Injury in Fact

Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  Here, Intervention alleges that City's intentional discrimination under the FHA, the ADA, and the CFEHA have injured it by causing a disparate impact upon Intervention's use and enjoyment of its facilities, interfering with Intervention's operation of its facilities, and interfering with the residents' rights to reside in the facilities.  (Compl. ¶¶ 21–22.)

Intervention contends that "[o]wnership of land is not required to bring land use claims" because "the law is well-established that economic injury is sufficient for standing." (*See* Opp'n 10–11.) To support its argument, Intervention cites *Huntington Branch NAACP v. Town of Huntington,* 689 F.2d 391 (2nd Cir. 1982), which held that plaintiffs who were attempting to secure federal funding to construct low-income housing had standing to assert discrimination claim against city, and *Oti Kaga, Inc. v. S.D. Housing Dev. Auth.*, 342 F.3d 871 (8th Cir. 2003), which held that a non-profit housing developer had standing in connection with its claim that the housing authority discriminatorily denied tax credits for a proposed housing development. Although it sold the real estate interest in the Facilities, Intervention claims it continues to have a direct and concrete economic stake in the outcome of this case because it is still an "operator" of the Facilities. (Opp'n 11–12.)

City argues that "without an ownership interest in real property, one loses standing to sue based on actions allegedly taken against that property." (Mot. 14.) To support its argument, City cites *Pavarti Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512 (7th Cir. 2010) as "an illustrative, analogous case." (*Id.*) However, the facts in *Pavarti* are distinguishable. In *Pavarti*, the plaintiff owned a hotel that she had contracted to sell, contingent upon the plaintiff's securing the city's approval to convert the hotel into a senior-living facility. *Pavarti*, 630 F.3d at 513. After the city denied approval of plaintiff's proposed use, the plaintiff and the buyer sought judicial review in state court**,** along with other claims for relief against the city. *Id*. After the suit was removed to federal court, the district court upheld the city's zoning decision, but left the other claims pending. *Id*. Thereafter, the plaintiff voluntarily dismissed the remaining claims. *Id*. A year later, after the plaintiff conveyed the property to the mortgage lender to resolve foreclosure proceedings, the plaintiff moved for post-judgment relief under Rule 60(b)(3), claiming that the city misrepresented material facts. *Id.* The court held the plaintiff lacked standing to challenge the city's zoning decision. *Id.* Although the court acknowledged that the plaintiff's other claims did

not depend on the plaintiff's continued ownership of the property, the court held that the plaintiff's injury was "self-inflicted" and not fairly traceable to the defendant's conduct because plaintiff voluntarily dismissed those claims. *Id*. at 514.

Unlike the plaintiff in *Pavarti*, Intervention maintains an economic interest in the Facilities that are subject to City's zoning classifications. Intervention contends that it remains the operator of business under the MSA with Urwell[2]. (Seeley Decl. ¶ 16.) If the APA does not close, Intervention alleges that the MSA will terminate and it will resume all aspects of the operation of the Facilities. (*Id*.) Because Intervention's deal with Urwell is contingent upon Intervention's success in its claim against City, the Court finds that Intervention has alleged sufficient injury in fact, traceable to City, and satisfies this prerequisite to standing.

## 2. Traceability

"To survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citing *Allen v. Wright*, 468 U.S. 737, 758 (1984)). Article III causation—like injury in fact—is inextricably intertwined with the merits of Intervention's claims, so factual disputes regarding causation should not be resolved on a Rule 12(b)(1) motion to dismiss. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that resolution of factual issues going to the merits requires a court to apply the standard applicable to a motion for summary judgment).

City argues that the causation element is not met because Intervention cannot show that the costs associated with the CUPs and fire upgrades are traceable to City

---

[2] The Court considers Seeley's Declaration but not the exhibits attached to his Declaration. City objects that this statement is irrelevant and an improper legal opinion, and argues that the APA and MSA are "fully executed" and operation of the Facilities has been transferred "regardless of the closing." (Objections to Seeley Decl. # 10, ECF No 444.) Intervention's statements regarding the APA and MSA are relevant because they are probative of whether Intervention has an economic interest in the property, and thus has standing. Additionally, Seeley's statement pertains to the terms of APA and MSA and does not state an improper legal opinion. The Court therefore overrules the City's objections.

because "the expenses were going to be incurred regardless," rendering the claim moot. (Mot. 16.) City attempts to support this argument by citing to three places in the trial transcript where City claims the Court "ruled that the land use classifications made by the City were reasonable." (*Id.*) However, City mislabels the Court's statements. (Mot. 8.) The statements relied on by City were not "rulings," but rather instructions to the jury in two instances, and the Court clarifying City's opinion regarding the facilities' classification as assisted living in the other. (Trial Transcript, 106:4–5; 797:4–8; 840:13–14, ECF Nos. 346, 352, 354.) Therefore, City cannot rely on these statements as "rulings" from the Court to support its arguments.

Intervention claims that it has suffered monetary damages for architecture fees, pre-litigation attorney's fees, and lost lease damages readily traceable to City's discriminatory conduct. (Opp'n 13–14.) Had City not required Intervention to obtain CUPs or additional sprinklers to comply with the rezoning of the Facilities, Intervention would not have spent money on the related expenses. The Court agrees with Intervention that these are actual and concrete economic injuries. "Palpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Maya*, 658 F.3d 1069. "Standing merely requires a redressable injury that is fairly traceable to Defendant's conduct. Whether a plaintiff can recover for that injury under a particular theory of liability is a separate question." *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1167 (C.D. Cal. 2011). Accordingly, the Court finds that Intervention has adequately pleaded injury-in-fact and causation for the purposes of Article III standing.

### 3. Redressability

With respect to Intervention's request for compensatory damages, the Court finds that Intervention has shown injury "likely to be redressed by a favorable decision." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 262 (1977). If Intervention can prove that City's intent to discriminate against disabled persons was the motive behind its zoning decisions, then there is a substantial

likelihood that a favorable decision would redress Intervention's damages relating to its architect's pre-litigation costs relating to the CUPs and sprinklers, and the alleged damages from a missed opportunity to lease the facilities.

Furthermore, the Court finds that invalidating City's classifications requiring Intervention to obtain CUPs and fire protection upgrades is substantially likely to redress two of the harms allegedly inflicted by the City: intentionally discriminating against Intervention by (1) "arbitrarily and capriciously applying its zoning and building codes;" and (2) "interfering with [Intervention's] current operation of the [Facilities]." (Compl. ¶ 21.) Accordingly, Intervention has met the redressability requirement for standing and the Court **DENIES** City's Motion to Dismiss. *See Augustine*, 704 F.2d at 1077 (citing *Thornhill Pub. Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)) ("[T]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact.")

**B.     Intervention's Motion to File a Supplemental Complaint and Modify the Scheduling Order**

Intervention moves to supplement its Complaint pursuant to Federal Rule of Civil Procedure 15(d) and to modify the scheduling order under Rule 16(b)(4). (Mot. Supp. Compl., ECF 446.) Rule 15(d) provides that "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). Rule 16(b)(4) provides that a schedule may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4).

With respect to Intervention's request to modify the scheduling order, the Court vacated all dates and deadlines in this matter except for the hearing related to City's Motion to Dismiss. (ECF Nos. 437, 445.) Accordingly, there is no operative

scheduling order to modify, and Intervention's Motion to Modify the scheduling order is moot. As for Intervention's Motion for Leave to File Supplemental Complaint, the Court **DENIES** this motion for the reasons discussed below.

The grant or denial of leave to file a supplemental complaint is within the broad discretion of the district court. *Keith*, 858 F.2d at 473. Motions to supplement pleadings are to be "freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other parties to the action." Wright, et al., Federal Practice and Procedure § 1504, at 186–87. "Rule 15(d) specifically permits supplemental pleadings setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *Id.* Supplemental pleadings "ought to be allowed as of course, unless some particular reason for disallowing them appears …" *Keith*, 858 F.2d at 473 (quoting *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963)).

Intervention requests that the Court allow it to file a Supplemental Complaint that addresses event and issues that have occurred since filing its Complaint in 2013. (Mot. Supp. Compl. 2.) Intervention does not seek to add claims for relief or change the types of damages or injunctive relief sought, but instead intends to "update the Court on the facts since filing of the Complaint[,] … to confirm that Court continues to have subject matter jurisdiction, namely that [it] has standing to continue to pursue the Action . . ." (*Id.*) The Court concludes that Intervention's request to supplement its Complaint is unnecessary.

As the Court observed in an earlier Order denying Intervention leave to file a supplemental complaint, federal notice pleading only requires that the complaint give notice to the defendant of the general basis of the plaintiff's claims. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001); *cf. Azco Biotech, Inc. v. Qiagen, N.V.*, No. 12-CV-2599-BEN DHB, 2015 WL 1138243, at *2 (S.D. Cal. Mar. 13, 2015) (noting that "an amended complaint to simply add new facts is unnecessary" where "[the]

action has progressed beyond a motion to dismiss"); *Cal. Ins. Guarantee Ass'n v. Burwell*, No. 215CV01113ODWFFMX, 2016 WL 3360955, at *2 n.5, *4 (C.D. Cal. June 14, 2016) (failure to plead evidentiary facts in support of preexisting claims does not render those facts inadmissible). Thus, Intervention's failure to allege these facts in its Complaint does not preclude it from introducing them at trial, as long as they are not being used to support a new theory of relief. Accordingly, the Court **DENIES** Intervention's Motion to Supplement its Complaint. (ECF No. 446.)

## C. Intervention's Application to File Exhibits A & B To Seeley Declaration Under Seal and in Redacted Form

Intervention seeks an order permitting it to file the following two documents under seal: 1) Redacted Exhibit A to the Declaration of Ken Seeley in opposition to the City's Motion to Dismiss; and 2) Redacted Exhibit B to the Declaration of Ken Seeley in opposition to the City's Motion to Dismiss. (Mot. to File Under Seal 1–2, ECF No. 439.) Intervention contends that these exhibits should be filed under seal because they contain "highly confidential private financial information" that is part of the pending APA and MSA between Intervention and Urwell. (Mot. to File Under Seal 2.) Intervention submitted two declarations in support of its Application to seal. (ECF Nos. 438, 440.) Because Intervention failed to comply with the Local Rules, Intervention's Application to File Exhibits A & B Under Seal and in Redacted Form is **DENIED** without prejudice. (ECF No. 439.)

In the Ninth Circuit, courts "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). "[P]romoting the public's understanding of the judicial process and of significant public events justify creating a 'strong presumption' in favor of … access." *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986). Access to judicial records is adjunct to several foundational principles of the American justice system: open courts, public trials, and judicial accountability. *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No.

SACV1600300CJCRAOX, 2017 WL 2806897, at *3 (C.D. Cal. Mar. 30, 2017) (citing *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606 (1982)) ("Public scrutiny ... enhances the quality and safeguards the integrity of the factfinding process, with benefits to ... society as a whole. Moreover, public access ... fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access ... permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government.") (discussing criminal proceedings); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

Two standards generally govern motions to file documents under seal—the "compelling reasons" standard, and the "good cause" standard. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010). The "compelling reasons" standard applies to most judicial records, which requires that a party show "compelling reasons supported by specific factual findings … [which] outweigh the general history of access and the public policies favoring disclosure." *Pintos*, 605 F.3d at 678 (quoting *Kamakana*, 447 F.3d at 1178–79). The "good cause" standard applies to "private materials unearthed during discovery," such as documents that are not part of the judicial record. *Kamakana*, 447 F.3d at 1180. Rule 26(c) governs here, allowing a trial court to grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The relevant standard for purposes of Rule 26(c) is whether "'good cause' exists to protect the information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Pintos*, 605 F.3d at 678 (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). The "good cause" standard presents a lower burden for the party wishing to seal documents than the "compelling reasons" standard. *Pintos*, 605 F.3d

at 678. "The cognizable public interest in judicial records that underlies the 'compelling reasons' standard does not exist for documents produced between private litigants." *Id*. (citation omitted). However, "[w]hen discovery material is filed with the court, [] its status changes," triggering "the public policy reasons behind a presumption of access to judicial documents …" *Foltz*, 331 F.3d at 1134 (quoting *Phillips*, 307 F.3d at 1213)).

Intervention wishes to seal documents attached to its Opposition to City's Motion to Dismiss. (ECF No. 439.) Rule 26(c) does not govern these documents because they are not "private materials unearthed during discovery," but will become part of the judicial record. Further, Intervention's Motion to Dismiss is dispositive, so Intervention must show compelling reasons for overcoming the presumption in favor of public access.

Under the "compelling reasons" standard, a district court must weigh "relevant factors," base its decision "on a compelling reason," and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." Pintos, 605 F.3d at 679 (quoting *Hagestad v.* Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995)). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to … release trade secrets." Kamakana, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598); *see also Miotox LLC v. Allergan, Inc.*, No. 2:14-CV-08723-ODW-PJW, 2016 WL 3176557, at *2 (C.D. Cal. June, 2, 2016). Other examples of compelling reasons include when a court record might be used to "gratify private spite or promote public scandal," to circulate "libelous" statements, or "as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598–99.

City argues that Intervention's Application is not only substantively prejudicial by concealing critical portions of the APA and MSA, but procedurally inadequate as well. (Opp'n to Mot to File Under Seal 2, ECF No. 443.) Local Rule 79-5 governs

the procedures a party must follow to file documents under seal. When "[a] person seeking leave of Court to file some or all of a document under seal … the Filing Party should file the Application in time to receive a determination before filing the motion or other paper that the proposed sealed document is intended to support." L.R. 79-5.2.2(a). City contends that Intervention failed to comply with this Local Rule because Intervention "had ample time to request the relief sought in [its] application … but did not do so." (Objection to App. For Order to File Under Seal 3, ECF No. 443.) City states that the documents Intervention seeks to file under seal—the APA and MSA—were dated October 2017, and were already in existence when City filed its Motion to Dismiss in November 2017. (*Id*. at 3.) Instead of filing its Application in time to receive a determination before filing its Opposition to City's Motion, Intervention filed its Application "simultaneously with [its] Opposition." (*Id*. at 2.)

City also argues that Intervention failed to comply with Local Rule 79-5.2.2(a)(i), which requires the Filing Party to submit a declaration that (1) establishes good cause or demonstrates compelling reasons to overcome the presumption of public access, and (2) informing the Court whether anyone opposes the Application. According to City, the Seeley Declaration "does not provide any facts in support of overcoming the presumption of public access," nor does the declaration address whether City opposed the Application. (*Id*. at 3.) Further, City claims that it was never contacted about the application before it was filed, and that it never received the Fitzgibbon declaration, which was one of two declarations accompanying Intervention's Application. (ECF No. 440). Lastly, City argues that Intervention failed to provide a table, listing each portion of the documents to be filed under seal, as required under Local Rule 79-5.2.2(a)(ii), and that City was not provided with proof of service or a declaration explaining why service was not required, as mandated in Local Rule 79-5.3(a)(ii).

In support of its Application, Intervention filed the declaration of Intervention's founder and director, Ken Seeley, and Intervention's counsel and managing

shareholder, Thomas Fitzgibbon. (ECF Nos. 438, 440.) However, as City argues, Intervention failed to provide City with Fitzgibbon's declaration or with the documents Intervention seeks to file under seal as required under Local Rule 79-5. Accordingly, Intervention's Application to file under seal is **DENIED** without prejudice.

//

//

//

## V. SCHEDULING & ORDER TO MEET & CONFER

In regard to the Joint Report of Outstanding Issues (ECF No. 435) the parties filed pursuant to the Court's Order on November 8, 2017 (ECF No. 433), **IT IS FURTHER ORDERED THAT**:

1) The parties shall meet and confer and jointly prepare an updated Proposed Pretrial Conference Order to be filed no later than **April 23, 2018**.

2) Intervention may not modify its pretrial documents, unless, and to the extent, City wishes to challenge the factual basis for its standing at trial, in which case it may amend documents in response to the standing issue only. *See Augustine*, 704 F.2d at 1077 (citing *Thornhill Pub. Co., Inc.*, 594 F.2d at 733) ("[T]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact.") The parties shall meet and confer regarding this issue as well, and file a joint statement and any proposed changes no later than **April 23, 2018**.

3) The parties will each be permitted to file a maximum of two motions in limine, non-duplicative of motions already filed and ruled upon.[3]

4) The Court also sets the following dates and deadlines:

//
//
//
//
//
//

---

[3] The Court holds that the motion in limine rulings issued by Judge Morrow on August 4, 2014 (ECF No. 133), are still binding and will not be reconsidered.

| Description | Date |
|---|---|
| Final Pretrial Conference at 1:30 p.m.<br>Motions in Limine to be Filed | **May 7, 2018** |
| Deadline to file Oppositions to Motions in Limine | **May 14, 2018** |
| Hearing on Motions in Limine | **May 21, 2018** |
| File Final Trial Exhibit Stipulation | **May 31, 2018** |
| Trial at 9:00 a.m. | **June 5, 2018** |

//

## VI.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED THA**T (1) Defendant's Motion to Dismiss (ECF No. 434) is **DENIED**; (2) Plaintiff's Motion to File Supplemental Complaint (ECF No. 446) is **DENIED**; and (3) Plaintiff's Application to File Exhibits A & B to Seeley Declaration Under Seal and in Redacted Form (ECF No. 439-2) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

March 22, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**